**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL HUMPHREYS,

                Plaintiff,

    v.

ASSICURAZIONI GENERALI, S.p.A.
(UK), et al.,

                Defendants.

CIVIL ACTION NO. 1:25-CV-01142

(MEHALCHICK, J.)

**MEMORANDUM**

Presently before the Court are Plaintiff Michael Humphreys's ("Humphreys") motion to remand and a cross-motion to strike filed by Defendants Assicurazioni Generali, S.p.A. (UK) ("Generali"), Catalina Worthing Insurance Limited ("Catalina"), Delta Lloyd Non-Life Insurance Company, LTD ("Delta Lloyd"), Dominion Insurance Company ("Dominion"), and Helvetia Accident ("Helvetia," and collectively with the other aforementioned Defendants, "LMR"). (Doc. 12; Doc. 20). For the following reasons, Humphreys's motion is **GRANTED**, and LMR's cross motion to strike is **DENIED**. (Doc. 12; Doc. 20).

I.     **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the complaint and, for the purposes of the instant motions, is taken as true. (Doc. 1-2). Humphreys alleges that LMR, which are individual insurance companies organized outside United States law (Doc. 1-2, ¶¶ 5, 7-10), breached a contract by failing to pay the Estate of Bedivere Insurance Company ("Bedivere") pursuant to two reinsurance agreements ("Reinsurance Agreements"). (Doc. 1-2, ¶ 1). Humphreys serves as the liquidator for Bedivere during the company's liquidation under Pennsylvania law. (Doc. 1-2, ¶ 1).

The Reinsurance Agreements contain underlying claims against Bedivere's insured, International Nickel Company of Canada Ltd. ("International Nickel").(Doc. 1-2, ¶ 13). Vale Canada Ltd. ("Vale") acquired International Nickel in 2006. (Doc. 1-2, ¶ 13). Employers Liability Assurance Corp. ("ELAC") and Employers Commercial Union ("ECU"), Bedivere's successors, each issued a policy to International Nickel (collectively, the "Policies"). (Doc. 1-2, ¶¶ 15, 18). Defendants, except for Delta Lloyd, participated in the reinsurance of ELAC's policy (the "1969 Reinsurance Slip Agreement"), and all Defendants participated in the reinsurance of ECU's policy (the "1972 Reinsurance Slip Agreement"). (Doc. 1-2, ¶¶ 17, 20). Each of the Policies provided International Nickel with insurance limits of $24 million, with an excess of $1 million over primary coverage on a per occurrence basis. (Doc. 1-2, ¶ 21).

International Nickel conducted mining, milling, refining, and smelting activities at various sites, resulting in environmental pollution. (Doc. 1-2, ¶ 22). As the principal held responsible, Vale submitted a proof of claim in the Bedivere estate for environmental pollution losses. (Doc. 1-2, ¶ 23). After negotiating, Bedivere issued a notice of determination for $13,500,000 in return for a full policy release. (Doc. 1-2, ¶ 25). Thereafter, Humphreys sent billings to LMR for their share of amounts due under the Reinsurance Agreements in accordance with Bedivere's notice of determination. (Doc. 1-2, ¶ 26). Despite numerous follow-up attempts, LMR has "failed or refused to pay the amounts owed under the Reinsurance Agreement." (Doc. 1-2, ¶ 27).

Accordingly, Humphreys filed the instant suit alleging that LMR breached the 1969 Reinsurance Slip Agreement and the 1972 Reinsurance Slip Agreement. (Doc. 1-2, ¶ 29-42). Count I relates to the alleged breach of the 1969 Reinsurance Slip Agreement, and Count II

relates to the alleged breach of the 1972 Reinsurance Slip Agreement. (Doc. 1-2, ¶ 29-42). As relief, Humphreys seeks an award in the amounts that LMR owe, including interest, indemnity under the Reinsurance Agreements, and attorneys' fees. (Doc. 1-2, ¶ 42). Humphreys initially filed this action in the Commonwealth Court of Pennsylvania. (Doc. 1-2, ¶¶ 11-12). On June 23, 2025, LMR filed a motion for removal to the Middle District of Pennsylvania. (Doc. 1). Humphreys filed the instant motion to remand and a brief in support on July 23, 2025, and on July 24, 2025, respectively. (Doc. 12; Doc. 15). On September 4, 2025, LMR filed a brief in opposition and the instant cross motion to strike as well as a brief in support. (Doc. 20; Doc. 21). On September 18, 2025, Humphreys filed a brief in opposition. (Doc. 26). On October 2, 2025, LMR and Humphreys filed a reply brief in support of their respective motions. (Doc. 31; Doc. 34). On October 10, 2025, LMR filed, as an emergency request, a motion for leave to file a sur-reply, or to strike new arguments raised by Humphreys, as well as a brief in support. (Doc. 35; Doc. 36).

II.   **LEGAL STANDARD**

A. MOTION TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The "purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Res. Corp.*, No. 07-2686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotation marks omitted).

"Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a

3

party to the action." *Champ v. USAA Casualty Insurance Company*, 2020 WL 1694372, at *2 (E.D. Pa. Apr. 7, 2020) (quoting *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019) (quotation omitted)). "[S]triking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice.'" *Champ*, 2020 WL 1694372, at *2 (quoting *Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-cv-2504, 2019 WL 1897164, at *4 (E.D. Pa. Apr. 29, 2019) (quotation omitted)). Thus, motions to strike pursuant to Rule 12(f) are generally disfavored "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Natale*, 2008 WL 2758238, at *14 (quoting *River Rd. Devel. Corp. v. Carlson Corp.*, No. 89-7037,1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)).

Further, "[w]hen faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." *Cestra v. Mylan, Inc.*, No. 14-825, 2015 WL 2455420, at *7 (W.D. Pa. May 22, 2015) (quoting *Eisai Co. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009), *as amended* (July 6, 2009).

B. MOTION TO REMAND

The removal of cases from state courts to federal courts is governed by 28 U.S.C. §§ 1441–1455. Under § 1441(a), a defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. 1441(c)(2), the Court may sever and remand any "claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute."

4

Section 1446 of the removal statute further sets forth the procedures for removal, explaining that a defendant seeking removal of an action must file a petition for removal with the proper district court that contains "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants" in the state court action. 28 U.S.C. § 1446(a). After a case has been removed, a plaintiff may move to remand the action back to state court under 28 U.S.C. § 1447(c) for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." *Ramos v. Quien*, 631 F. Supp. 2d 601, 607 (E.D. Pa. Nov. 18, 2008) (quoting *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993)). However, a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c).

Because federal courts are courts of limited jurisdiction, both the Supreme Court of the United States and the Third Circuit Court of Appeals have recognized that removal statutes are to be strictly construed against removal, with all doubts resolved in favor of remand. *See, e.g., Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *see also Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

III.   DISCUSSION

A.  MOTION TO STRIKE

In support of the motion to remand, Bedivere submitted declarations of Trevor Clegg ("Clegg") and Keith Kaplan ("Kaplan").[1] (Doc. 15-11; Doc. 15-1). LMR argues that the Court

---

[1] Clegg had worked as an underwriter as well as a claims handler and has decades of experience in the London reinsurance market. Kaplan serves as Bedivere's Chief Liquidation Officer.

5

should strike the declarations "because they have no evidentiary foundation." (Doc. 21, at 11). According to Bedivere, the purpose of the declarations is to "provide extrinsic evidence to assist the Court in interpreting" the Reinsurance Agreements, not to "supply 'lost' contract wording." (Doc. 26, at 5-6).

In a diversity case, a federal court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Pennsylvania law regarding lost policies, the party seeking the benefits of a lost contract bears the burden of establishing the existence or issuance of a lost or missing insurance policy, and the terms thereof, with clear and convincing evidence. *See Compass Tech., Inc., v. Tseng Laboratories, Inc.*, 71 F.3d 1125, 1133 (3d Cir. 1995). "Evidence of industry custom or trade usage 'is always relevant and admissible in construing commercial contracts,' and does not depend on the existence of ambiguity in the contractual language." *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 160 (3d Cir. 2017). For an industry custom or trade usage to be binding, "[a] usage or custom… must be so uniform, long-established, and generally acquiesced in by those pursuing the particular calling as to induce the belief that the parties contracted in reliance upon it. It must be proved by instances of actual practice – a succession of individual facts[.]" *In re Petition of Frescati Shipping Co., Ltd.*, No. 05-CV-305, 2016 WL 4035994, at *60 (E.D. Pa. July 25, 2016), *aff'd in part, vacated in part, rev'd in part sub nom. In re Frescati Shipping Co., Ltd.*, 886 F.3d 291 (3d Cir. 2018), *aff'd sub nom. CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 589 U.S. 348 (2020).

According to LMR, because Humphreys has not shown that a "diligent, bona fide and thorough search" was made to prove that the Reinsurance Agreements included the SOS Clauses, the Court should strike the declarations of Clegg and Kaplan. (Doc. 21, at 12) (citing

6

*Coregis Ins. Co. v. City of Harrisburg*, 401 F. Supp. 2d 398, 402-03 (M.D. Pa. 2005)). This argument fails to persuade the Court because the "bona fide" rule does not apply here.[2] The declarations are not offered to prove the contents of "lost" contractual text. Instead, their purpose is to show evidence of ordinary London market practice and how the industry typically used the SOS Clauses. *See AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 222 (3d Cir. 2009) (concluding that the district court could consider trade use evidence showing that "asbestosis" was commonly used in the insurance industry to refer to all asbestos-related diseases); *see also Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co.*, 209 F.3d 273, 278 (3d Cir. 2000) (noting that Pennsylvania courts have stated that "'[c]ourts must examine the totality of the insurance transaction involved to ascertain the reasonable expectation of the insured.'") (citations omitted).

LMR's bona fide argument does not persuade the Court because the issue does not involve the loss of an instrument or proving the contents of "missing" contractual text. The Court recognizes that Humphreys offers the declarations to prove the customary practices of the London market at the time the parties executed the Reinsurance Agreements. (Doc. 15-1; Doc. 15-11). Accordingly, LMR's cross motion to strike is **DENIED**. (Doc. 20).

B. MOTION TO REMAND

In deciding the motion to remand, the Court must determine whether the SOS Clause prohibits LMR from removing this action from the Commonwealth Court of Pennsylvania. Humphreys argues that caselaw has construed the SOS Clause, which "has been in standard use for decades for reinsurance contracts," as a waiver of removal rights. (Doc. 15, at 12).

---

[2] "'To recover on an instrument, the original of which has been lost, the burden of proving the loss of the original and that a diligent, bona fide and thorough search was made without success is upon the one offering secondary evidence.'" (Doc. 21, at 11-12).

LMR argues that Humphreys has not met its burden to prove that the SOS Clause waives removal jurisdiction. (Doc. 21, at 8).

"The paramount goal of contract interpretation is to determine the intent of the parties." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009). A court may refer to extrinsic evidence to determine the intent of the parties. *See Glenn Distributors Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 (3d Cir. 2002). Forum selection clauses included in contractual agreements can waive a defendant's right to remove a case to federal court. *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1216-17 (3d Cir. 1991). Forum selection clauses are presumed valid unless the challenging party "'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). The Third Circuit instructs a court to use federal law when determining the effect of a forum selection clause because "'[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature.'" *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 84 (3d Cir. 2006).

First, the Court finds that U.K. law does not apply here. (Doc. 21, 12-18). The SOS Clause renders this issue procedural, not substantive. *Aubrey*, 189 F. App'x at 84. As LMR noted in its brief, U.K. law does not apply to procedural issues. (Doc. 21, at 12 n. 8). Second, despite what LMR argues (Doc. 21, at 8; Doc. 43, at 44:2-6), LMR bears the burden. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) ("It is now settled in this Court that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.") (citing *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).

In particular, Humphreys argues that the parties intended N.M.A. 772 to serve as the SOS Clause, which was the standard clause in the London Reinsurance Market when the parties executed both reinsurance agreements. (Doc. 15, 14-17). The SOS Clause states:

> It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all such matters arising hereunder shall be determined in accordance with the law and practice of such Court.
>
> And;
>
> … and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.
>
> (Doc. 15-13, at 19).

There was a consensus as to what an underwriter and a broker intended. (Doc. 15-11, ¶ 4.6). It appears that the parties likely intended to apply N.M.A. 772 to the instant reinsurance agreements because it was "recommended by the NMA committee," broker, and underwriters. (Doc. 15-11, ¶ 6.14).

The Third Circuit has interpreted nearly identical language of a forum selection clause in a procedurally similar case.[3] Specifically, the Third Circuit explained that "by consenting

---

[3] The forum selection clause at issue provided that:

> In the event the Retrocessionaire [Chesapeake] is not domiciled in the United States of America, and the Retrocessionaire fails to pay an amount claimed to be due hereunder, the Retrocessionaire, at the request of the Company [Mutual Fire], will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction; and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

to 'submit' to 'any court' of competent jurisdiction 'at the request of the Company,' and to comply with all requirements necessary to give 'such court' jurisdiction, Chesapeake agreed to go to, and stay in, the forum chosen by Mutual Fire." *Foster*, 933 F.2d at 1216-17 (emphasis omitted). The Third Circuit's holding found further support from the parties' agreement that disputes were to "be determined in accordance with the law and practice of such court" and that the defendant would "abide by the final decision of such court." *Foster*, 933 F.2d at 1217.

Applying *Foster*, the Court focuses on LMR's consent to the jurisdiction of "any court of competent jurisdiction" that Humphreys selected. 933 F.2d at 1216-17. As such, the Court finds that LMR has agreed "to go to" and "stay in" in the Commonwealth Court of Pennsylvania. *Foster*, 933 F.2d at 1216-17. Thus, Humphreys's motion to remand is **GRANTED**. (Doc. 12).

## IV.    CONCLUSION

Based on the foregoing, Humphreys's motion to remand is **GRANTED**, and LMR's cross motion to strike is **DENIED**. (Doc. 12; Doc. 20). An appropriate Order follows. The Clerk of Court is directed to close this case in this district.

**Dated: March 31, 2026**                                    *s/ Karoline Mehalchick*

                                                        **KAROLINE MEHALCHICK**
                                                        **United States District Judge**

---

*Foster*, 933 F.2d at 1216 (following "a long line of cases treating similar language which found that the forum selection clauses waived the defendant's right to remove, and which therefore granted the plaintiff's motion to remand.") (citations omitted).